UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL VERARDO and LORI LIPPA,
on behalf of themselves and all
others similarly situated.

       Plaintiffs,

                   -v-                                   Case No.

PROGRESSIVE CASUALTY INSURANCE
COMPANY and
PROGRESSIVE MAX INSURANCE
COMPANY,

       Defendants.


------------------------------------------------------------X

## CLASS ACTION COMPLAINT

    Michael Verardo and Lori Lippa ("Plaintiffs") bring this class action on behalf of themselves and all others similarly situated, by and through undersigned counsel, and for their Complaint against Progressive Casualty Insurance Company ("Progressive Casualty") and Progressive Max Insurance Company ("Progressive Max") (collectively "Defendants" or "Progressive") state and allege as follows:

## INTRODUCTION

    1.    This is a class action on behalf of Plaintiffs and all other similarly situated claimants in New York who received a payment for the loss of a totaled vehicle from Defendants, where Defendants used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles.  By using these valuation reports, Defendants systemically thumb the scale when calculating the actual cash value of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b)

contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendants' vendor Mitchell; and (e) on information and belief, not applied by Defendants and Mitchell to insureds in other states like California.

2.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the actual cash value of the vehicles. Specifically, under their insurance policy terms and applicable New York law, Defendants have a duty to pay, and represent that they will pay, the actual cash value of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendants fail to fulfill this obligation by using a valuation process that employs improper and unreasonable adjustments to reduce the value of comparable vehicles specified in the valuation reports, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

3.      Specifically, Defendants, through Mitchell, systemically apply a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the actual cash value of Plaintiffs' and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit 1 at p. 8; Exhibit 2 at p. 8.

4.      Moreover, pursuant to 11 NYCCR § 216.0 et seq. ("Regulation 64"), the State of New York has established minimum standards for the prompt, fair and equitable settlement of total loss property claims that are incorporated by law into Defendants' insurance contracts with their insureds and also apply to Defendants' adjustment of third-party claims. Among other requirements, Regulation 64 requires that insurance companies, like Defendants, who use computerized databases to value total loss claims must utilize a methodology that produces "statistically valid" fair market values for a substantially similar vehicle in the local market area and base their valuation on data from vehicles sold within 90 days prior to the loss in the relevant local market area. 11 NYCCR § 216.7(a)(10) & (c)(1)(iii). By making arbitrary deductions based on an antiquated and erroneous assumptions about "consumer purchasing behavior," Defendants have violated the minimum requirements of Regulation 64 and used an invalid, arbitrary and erroneous methodology that significantly underpaid the total loss claims of Plaintiffs and the members of the proposed Classes.

5.      This pattern and practice of undervaluing comparable and total loss vehicles when paying automobile total loss claims through the systemic use of these invalid and deceptive adjustments, which benefits the insurer at the expense of the insured, violates Defendants' policies with their insureds, New York Regulation 64 governing the adjustment of total loss claims, and New York General Business Law § 349 ("GBL").

## JURISDICTION AND VENUE

6.      Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiffs and the proposed class members are citizens of the State of New York. Each Defendant is a Delaware Corporation that has its corporate headquarters in Mayfield Village, OH, and, at all relevant times hereto, each Defendant was engaged in the

business of marketing and selling insurance policies and adjusting insurance claims in the State of New York.

7.      Plaintiffs estimate that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustments that were deceptively deducted), claimed by Plaintiffs and the Class are estimated in good faith to exceed $5,000,000.

8.      Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in this District, and Defendants transact business in this District.

## **PARTIES**

9.      Plaintiff Michael Verardo resides in Dutchess County, New York. At all relevant times, Plaintiff Verardo was contracted with Progressive for automobile insurance. On or about April 28, 2017, Plaintiff Verardo was in a car wreck and Defendants deemed his vehicle to be a total loss.

10.     Plaintiff Lori Lippa resides in Monroe County, New York. At all relevant times, Plaintiff Lippa was contracted with Progressive for automobile insurance. On or about November 4, 2020, Plaintiff Lippa was in a car wreck and Defendants deemed her vehicle to be a total loss.

11.     Defendant Progressive Casualty has its corporate headquarters located at 6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143. According to the Progressive website[1], Progressive Casualty, in coordination with other affiliated entities within the Progressive Group, conducts business in New York and throughout the country under the brand Progressive, or the Progressive Group of Insurance Companies, underwriting auto insurance to over 20 million drivers

---

[1] https://www.progressive.com/auto/.

countrywide.  The 2019 Annual Report for Progressive Corporation reported $37.6 billion in net premiums written by Progressive Corporation and its subsidiaries. Exhibit 3 at p. 2. In the state of New York, Progressive Casualty underwrites auto insurance in coordination with other Progressive Group entities, all of which are registered with the New York Department of Financial Services under the same Group Number (155), Group Name ("Progressive Group"), with the same website (www.progressive.com), and the same address (6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143). The Progressive Group entities issuing auto insurance policies in the State of New York include: Progressive Casualty Insurance Company, Progressive Advanced Insurance Company, Progressive Specialty Insurance Company, Progressive Max Insurance Company, Progressive Northwestern Insurance Company, Progressive Direct Insurance Company, and Progressive Northern Insurance Company.

12.     Upon information and belief, Progressive Casualty performs all material insurance operations related to auto insurance policies underwritten by Progressive Group entities in the State of New York. Most relevant to this action, Progressive Casualty manages and implements the adjustment of total loss automobile claims made on policies of insurance issued by it and any Progressive Group entities in New York, pursuant to the same policies and practices, by the same adjustor employees working in the same claims centers, utilizing a single website (www.progressive.com), and using the same address, telephone number, trademarks and letterhead on correspondence. Consistent with these common adjustment policies, practices, and employees, job postings at the Progressive website refer throughout to "Progressive" as the entity advertising for employment. Exhibit 4.

13.     As detailed at the Progressive website, Progressive Casualty investigates, handles, and adjusts all insurance claims using the same policies and procedures, regardless which

Progressive Group entities were identified or disclosed in the relevant policy. *See* Exhibit 5. These common policies and procedures, implemented by the same adjustor employees, apply specifically to the adjustment of claims for actual cash value when a total loss is covered by the policy. *Id.*

14.    Upon further information and belief: (a) Progressive Casualty is the custodian of record for material documents for all Progressive Group entities, Progressive Corporation, and all of Progressive Corporation's subsidiaries; (b) Progressive Casualty maintains claim information for all auto claims within the same computer systems, regardless which Progressive Group entities are directly involved in the underwriting and issuance of the relevant policy; (c) Progressive Casualty employed and paid the adjusters who adjusted Plaintiffs' and the putative Classes' total loss claims; (d) Progressive Casualty (on behalf of all Progressive Group entities) entered into a single contractual arrangement with Mitchell to determine actual cash value covering all claims involving or related to Progressive insureds; and (e) Progressive Casualty was directly involved in the wrongdoing alleged herein as the adjustor of the total loss claims.

15.    Consistent with marketing, selling, and adjusting insurance under the same Progressive brands and trademarks, out of the same corporate headquarters and regional offices, and via the same website (www.progressive.com), Progressive Casualty and the other Defendants issue and underwrite insurance policies with no material differences relevant to the claims in this action, regardless which Progressive Group entity may be identified on the insurance policy.

16.    Consistent with these claim practices, each of the Plaintiffs' valuation reports refer only to the Progressive Group of Insurance Companies, without reference to any individual Progressive Group entity. Exhibits 1-2. Similarly, each Plaintiff's Settlement Summary references only the Progressive Group of Insurance Companies. Exhibits 6-7.

17.     Consistent with all the above, the terms of service for the Progressive website defines "Progressive" as Progressive Casualty Insurance Company and its affiliated companies;[2] Progressive Casualty is the owner of at least 207 trademarks utilized commonly by the Progressive Group entities (Exhibit 8); and Progressive Casualty is the owner of at least 19 patents related to how it processes insurance claims and performs other insurance marketing and management functions on behalf of the Progressive Group entities. Exhibit 9.

18.     Defendant Progressive Max has its corporate headquarters located at 6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143. Progressive Max issues insurance policies in New York and is registered with the New York Department of Financial Services under the same Group Number (155), Group Name ("Progressive Group"), with the same website (https://www.progressive.com), and the same address (6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143) as Progressive Casualty, Progressive Advanced, and Progressive Specialty.

19.     Non-party Progressive Advanced has its corporate headquarters located at 6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143. Progressive Advanced issues insurance policies in New York and is registered with the New York Department of Financial Services under the same Group Number (155), Group Name ("Progressive Group"), with the same website (https://www.progressive.com), and the same address (6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143) as Progressive Casualty, Progressive Max, and Progressive Specialty.

20.     Non-party Progressive Specialty has its corporate headquarters located at 6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143. Progressive Specialty issues insurance policies in New York and is registered with the New York Department of Financial Services under

---

[2] https://www.progressive.com/copyright/

the same Group Number (155), Group Name ("Progressive Group"), with the same website (https://www.progressive.com), and the same address (6300 Wilson Mills Rd, W33, Mayfield Village, OH 44143) as Progressive Casualty, Progressive Advanced, and Progressive Max.

## FACTUAL ALLEGATIONS

21.    On April 28, 2017, Plaintiff Verardo was involved in a car wreck and sustained physical damage to his vehicle. At the time of the car wreck, Plaintiff Verardo was contracted with Progressive for automobile insurance though a policy of insurance underwritten by Progressive Max in coordination with Progressive Casualty.

22.    On November 4, 2020, Plaintiff Lippa was involved in a car wreck and sustained physical damage to her vehicle. At the time of the car wreck, Plaintiff Lippa was contracted with Progressive Casualty for automobile insurance.

23.    Like all members of the putative Classes, each Plaintiff made a property damage claim to Defendants.

24.    Pursuant to the same policies and procedures, Defendants declared each Plaintiff's vehicle to be a total loss and purported to offer each of them the actual cash value of their loss vehicles, as they promised and represented they would under the uniform provisions of its insurance policies and New York law.

25.    When calculating their valuations and claims payments, Defendants systemically employ a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive Group entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy.

Defendants provided a Mitchell Vehicle Valuation Report for Mr. Verardo on May 2, 2017. *See* Exhibit 1. Similarly, Defendants provided a Mitchell Vehicle Valuation Report for Ms. Lippa on November 6, 2020. *See* Exhibit 2.

26.     The Mitchell Vehicle Valuation Reports used by Defendants during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit 1 at p. 7; Exhibit 2 at p. 8.

27.     In addition, however, the valuation reports used by Defendants make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff Verardo, Projected Sold Adjustments in the amounts of -$1,356.00, -$1,139.00, -$991.00, and $1,360.00, respectively, were applied to each of the four comparable vehicles. Exhibit 1 at pp. 5-7. For Plaintiff Lippa, Projected Sold Adjustments in the amounts of -$785.00, -$611.00, and -$611.00, respectively, were applied to the second, third, and fourth comparable vehicles. Exhibit 2 at pp. 5-6.

28.     Defendants provide no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support *any* Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiffs' valuation reports. Instead, the *only* explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment –

an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit 1 at p. 8; Exhibit 2 at p. 8.

29.     Defendants' Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendants do not do what they say they will do – pay actual cash value. Moreover, as described above, Defendants provide no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit 1 at p. 8; Exhibit 2 at p. 8.

30.     In truth, Defendants' Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to market to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining actual cash value. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendants assume always exists without any explanation or support.

31.     Defendants' Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles. Defendants begin the process of valuing loss vehicles using comparative methodology but improperly deviate from that process by thumbing the scales in favor of Progressive. Defendants document the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments

accordingly. Plaintiffs do not challenge these documented adjustments. At this stage of the process, Defendants abandon the comparative methodology and apply adjustments that are contrary to proper appraisal methodologies for determining actual cash value. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

32.     The impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

33.     On information and belief, the impropriety and arbitrariness of Defendants' Projected Sold Adjustments are further demonstrated by the fact that Progressive Group entities do not apply these adjustments when valuing total losses in California. There is no justification for applying these adjustments when valuing total losses in New York while not subjecting California claimants to the same negative adjustments.

34.     Plaintiffs and each member of the classes were damaged by Defendants' application of these Projected Sold Adjustments because they were not paid the actual cash value they would have received had Defendants applied proper methodologies and appraisal standards.

35.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendants for actual cash value.  Specifically, for Plaintiff Verardo, were it not for this deceptive and improper adjustment, the payment of actual cash value by Defendants would have been $1,211.50 higher, before adding the related increase in payments for applicable

sales taxes. Specifically, for Plaintiff Lippa, were it not for this deceptive and improper adjustment, the payment of actual cash value by Defendants would have been $669.00 higher, before adding the related increase in payments for applicable sales taxes.[3]

## CLASS ALLEGATIONS

36.     This action is brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under Rule 23 of the Federal Rules of Civil Procedure, for declaratory judgment and damages, plus interest, costs, and attorney's fees. Plaintiffs seek certification of this action as a class action on behalf of the following Classes:

**Breach of Contract Class (Against Progressive Casualty)**: All persons who made a first-party claim on a policy of insurance issued by Progressive Casualty or Progressive Casualty and any Progressive Group entity to a New York resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

**Breach of Contract Subclass I (Against Progressive Casualty and Progressive Max)**: All persons who made a first-party claim on a policy of insurance issued by Progressive Casualty and Progressive Max to a New York resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

**Gen. Bus. Law § 349 Class (Against Progressive Casualty)**: All persons who made a claim on a policy of insurance issued by Progressive Casualty or Progressive Casualty and any Progressive Group entity to a New York resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

---

[3] The dollar amount of Defendants' underpayment to each Plaintiff was calculated as the difference in the "Base Value" without application of the improper Projected Sold Adjustments and the "Base Value" as calculated by Mitchell.

**Gen. Bus. Law § 349 Subclass I (Against Progressive Casualty and Progressive Max)**: All persons who made a claim on a policy of insurance issued by Progressive Casualty and Progressive Max to a New York resident who, from the earliest allowable time through the date of resolution of this action, received compensation for the total loss of a covered vehicle, where that compensation was based on a valuation report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

37.    Plaintiffs reserve the right to amend or modify the Class definitions.

38.    Excluded from the Classes are the Defendants, any parent, subsidiary, or control person of the Defendants, as well as the officers and directors of the Defendants and the immediate family members of any such person. Also excluded is any judge who may preside over this cause of action.

39.    **Numerosity (Rule 23(a)(1)).** The exact number of the Classes, as herein identified and described, is not known, but it is estimated to be in the thousands if not tens of thousands. Accordingly, the Classes are so numerous that joinder of individual members herein is impracticable.

40.    **Commonality (Rule 23(a)(2)).** There are common questions of law and fact in the action that relate to and affect the rights of each member of the Classes and the relief sought is common to the entire class. In particular, the common questions of law and fact include:

     a.    Whether Defendants systemically used Mitchell's Vehicle Valuation Reports in adjusting total loss claims to determine actual cash value;

     b.    Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendants for the actual cash value of Plaintiffs' and Class members' total loss vehicles;

c.      Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's actual cash value was deceptive;

d.      Whether Defendants' reliance on the Mitchell Vehicle Valuation Reports violated Regulation 64;

e.      Whether the requirements of Regulation 64 are incorporated into Defendants' automobile policies providing coverage for total losses;

f.      Whether Defendants' deceptive acts and improper practices injured Plaintiffs and members of the Classes;

g.      Whether Defendants' acts violated their obligations under the policy of insurance;

h.      Whether Plaintiffs and the Classes are entitled to compensatory damages, and if so, the calculation of damages; and

i.      Whether Plaintiffs and members of the Classes are entitled to an injunction restraining Progressive's future deceptive acts and practices.

41.      **Typicality (Rule 23(a)(3)).** The claims of the Plaintiffs, who are representative of the Classes herein, are typical of the claims of the proposed Classes, in that the claims of all members of the proposed Classes, including the Plaintiffs, depend on a showing of the acts of Progressive giving rise to the right of Plaintiffs to the relief sought herein. There is no conflict between the individually named Plaintiffs and the other members of the proposed Classes with respect to this action, or with respect to the claims for relief set forth herein.

42.      **Adequacy (Rule 23(a)(4)).** The named Plaintiffs are the representative parties for the Classes, and are able to, and will fairly and adequately, protect the interests of the Classes. The

attorneys for the Plaintiffs and the Classes are experienced and capable in complex civil litigation, insurance litigation, and class actions.

43.    **Predominance & Superiority (Rule 23(b)(3)).** Class certification is appropriate under Rule 23 because the common questions of law and fact in this case predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate action is remote due to the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. Class treatment also would permit the adjudication of claims by class members who claims are too small and complex to individually litigate against a large corporate defendant.

44.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, making final declaratory or injunctive relief appropriate with respect to the proposed Classes as a whole.

45.    **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
(ON BEHALF OF PLAINTIFFS VERARDO, LIPPA, AND MEMBERS OF THE BREACH OF CONTRACT CLASS AND THE BREACH OF CONTRACT SUBCLASS)

46.    Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

47.     This cause of action is asserted on behalf of Plaintiffs Verardo, Lippa, and members of the Breach of Contract class against Progressive Casualty. This cause of action is asserted on behalf of Plaintiff Verardo and members of the Breach of Contract Subclass against Progressive Casualty and Progressive Max.

48.     Plaintiffs Verardo and Lippa each made a claim for property damage on their Progressive insurance policy.

49.     At the time of his claim, Plaintiff Verardo was party to an insurance contract requiring Progressive Casualty and Progressive Max to handle, adjust, and pay insureds the actual cash value of their total loss claim.

50.     Before making his claim, and in the time since, Plaintiff Verardo has performed all obligations under his policy of insurance and was entitled to the benefits he contracted for in that policy.

51.     At the time of her claim, Plaintiff Lippa was party to an insurance contract requiring Progressive Casualty to handle, adjust, and pay insureds the actual cash value of their total loss claim.

52.     Before making her claim, and in the time since, Plaintiff Lippa has performed all obligations under her policy of insurance and was entitled to the benefits she contracted for in that policy.

53.     Through the use of Projected Sold Adjustments in Mitchell vehicle valuation reports that are improper, unfounded and violative of Regulation 64, as detailed above, Defendants Progressive Casualty and Progressive Max handled, adjusted, and paid Plaintiff Verardo's claim, Plaintiff Lippa's claim, and the claims of the members of the proposed Breach of Contract Class and Subclass, for less than the actual cash value required by the insurance contract.

54.     As a direct result of Defendants Progressive Casualty's and Progressive Max's breaches, Plaintiff Verardo, Plaintiff Lippa, and members of the Breach of Contract Class and Subclass sustained actual damages. Plaintiff Verardo's damages are at least $1,211.50 (before calculation of additional sales tax benefits), plus pre-judgment and post-judgment interest. Plaintiff Lippa's damages are at least $669.00 (before calculation of additional sales tax benefits), plus pre-judgment and post-judgment interest.

**SECOND CAUSE OF ACTION**
**VIOLATION OF N.Y. GEN. BUS. LAW § 349**
(ON BEHALF OF PLAINTIFFS VERARDO, LIPPA, AND MEMBERS OF THE GEN. BUS.
LAW § 349 CLASS AND THE GEN. BUS. LAW § 349 SUBCLASS)

55.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

56.     This cause of action is asserted on behalf of Plaintiffs Verardo, Lippa, and members of the Gen. Bus. Law § 349 Class against Progressive Casualty. This cause of action is asserted on behalf of Plaintiff Verardo and members of the Gen. Bus. Law § 349 Subclass against Progressive Casualty and Progressive Max.

57.     Plaintiffs made claims for property damage to Progressive.

58.     New York General Business Law § 349(a) provides: "Deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state are hereby declared unlawful."

59.     The acts and practices alleged herein are deceptive and were carried out in the conduct of Defendants' business. The use of unfounded and arbitrary Projected Sold Adjustments as a means of undervaluing claimants' total loss claims has the capacity to and does deceive and injure consumers. Defendants do not do what their policies says they will do – pay actual cash value. Moreover, as described above, Defendants provide no explanation or justification for the

Projected Sold Adjustment, much less the specific amount applied, other than the vague and unsupported speculation that it purportedly "reflect[s] consumer behavior."

60.    Defendants used these unsupported misrepresentations about "consumer purchasing behavior" to systematically undervalue and, in turn, underpay Plaintiffs' total loss claims as well as the total loss claims of members of the proposed Gen. Bus. Law § 349 Class and Subclass.

61.    Defendants used valuation reports that systematically misrepresent and undervalue the actual cash value of claimants' loss vehicles. The reports make Projected Sold Adjustments that are arbitrary, unfounded and violate Regulation 64. These adjustments are used to reduce the valuation of claimants' loss vehicles. Defendants, in turn, use these reports as the basis for offering claimants what they, deceptively, purport to be the actual cash value of the totaled vehicles.

62.    Here, Defendants misrepresented the actual cash value of each Plaintiffs totaled vehicle, paying, before calculation of additional sales tax benefits, Plaintiff Verardo at least $1,211.50 less than the actual cash value to which he was entitled and Plaintiff Lippa at least $699.00 less than the actual cash value to which she was entitled.

63.    As a result of Defendants' actions, Plaintiffs and members of the Gen. Bus. Law § 349 Class and Subclass incurred damages, including actual damages in the amount their loss vehicle valuations were reduced through the use of Projected Sold Adjustments, applicable tax calculation adjustments, statutory damages under N.Y. Gen. Bus. Law § 349(h) where applicable, treble damages up to $1,000 under N.Y. Gen. Bus. Law § 349(h) where applicable, and pre-judgment interest.

64.    Plaintiffs and members of the N.Y. Gen. Bus. Law § 349 Class and Subclass are entitled to reasonable attorney's fees upon prevailing pursuant to Gen. Bus. Law § 349(h).

## THIRD CAUSE OF ACTION
## DECLARATORY JUDGMENT
(ON BEHALF OF ALL PLAINTIFFS AND ALL CLASSES AND SUBCLASSES)

65.     Plaintiffs hereby repeat and reallege all preceding paragraphs contained herein.

66.     This cause of action is asserted on behalf of Plaintiffs Verardo, Plaintiff Lippa, and members of the Breach of Contract Class against Progressive Casualty. This cause of action is asserted on behalf of Plaintiff Verardo and members of the Breach of Contract Subclass I against Progressive Casualty and Progressive Max. This cause of action is asserted on behalf of Plaintiff Verardo, Plaintiff Lippa, and members of the Gen. Bus. Law § 349 Class against Progressive Casualty. This cause of action is asserted on behalf of Plaintiff Verardo and members of the Gen. Bus. Law § 349 Subclass I against Progressive Casualty and Progressive Max.

67.     A dispute between Plaintiffs and the Classes and Progressive is before this Court under New York law concerning the construction of Regulation 64 and whether Defendants' use and application of Projected Sold Adjustments violates Regulation 64.

68.     Defendants' unlawful common policy and general business practice as described herein are ongoing. Accordingly, as detailed above, Defendants have violated, and continue to violate, Regulation 64 by applying Projected Sold Adjustments to reduce the valuation of claimants' loss vehicles.

69.     Plaintiffs, therefore, seek (1) a declaration on behalf of themselves and the Classes they represent that Defendants' application of Projected Sold Adjustments violates Regulation 64 and (2) appropriate injunctive, equitable and monetary relief based on and flowing from the declaration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

a)      determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, certify the proposed Classes for class treatment, appoint Plaintiffs as class representatives for each class, and appoint undersigned counsel as Class Counsel;

b)      enter an order finding that Defendants' actions described herein constitute breaches of the express terms of its policies of insurance;

c)      enter a declaratory judgment that Defendants' Projected Sold Adjustments violates Regulation 64 and appropriate injunctive, equitable and monetary relief based on and flowing from the declaration;

d)      enter an order finding that Defendants' actions described herein constitute violations of N.Y. Gen. Bus. Law § 349;

e)      award Plaintiffs and members of the Classes actual damages according to proof;

f)      award Plaintiffs and members of the Gen. Bus. Law §349 Class and Gen. Bus. Law §349 Subclass, alternatively, statutory damages and treble damages up to $1,000 pursuant to N.Y. Gen. Bus. Law § 349(h);

g)      enter an injunction restraining Defendants' use of deceptive and unfounded Projected Sold Adjustments in determining the actual cash value of total loss vehicles;

h)      award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

i)      award reasonable attorney's fees and litigation costs and expenses pursuant to applicable law, including N.Y. Gen. Bus. Law § 349(h); and

j)      grant such other legal and equitable relief as the Court may deem appropriate, including specific performance as an alternative to damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Dated: March 1, 2022          Respectfully submitted,

/s/ Andrew Shamis
Andrew J. Shamis (NY #5195185)
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
Fax: 786-623-0915
ashamis@shamisgentile.com

And

Hank Bates (*pro hac vice* forthcoming)
Tiffany Oldham (*pro hac vice* forthcoming)
Lee Lowther (*pro hac vice* forthcoming)
Jake G. Windley (*pro hac vice* forthcoming)
**CARNEY BATES & PULLIAM, PLLC**
519 W. 7th Street
Little Rock, Arkansas 72201
Telephone: 501-312-8500
Fax: 501-312-8505
hbates@cbplaw.com
toldham@cbplaw.com
llowther@cbplaw.com
jwindley@cbplaw.com

And

Thomas M. Mullaney (TM-4274)
**THE LAW OFFICE OF THOMAS M. MULLANEY**
530 Fifth Ave—23 Floor
New York, New York 10036
Telephone: 212-223-0800

21

Fax: 212-661-9860
tmm@mullaw.org

And

Rachel Dapeer, Esq. (NY #4995130)
**DAPEER LAW, P.A.**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-610-5223
rachel@dapeer.com

Scott Edelsberg (*pro hac vice* forthcoming)
Christopher Gold (*pro hac vice* forthcoming)
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 1, 2022, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic mail notice to all counsel of record.

*/s/ Andrew Shamis*
Andrew Shamis