**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOMINICK VOLINO, ET AL.,<br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE<br>COMPANY, ET AL.,<br>Defendants.<br><br>-------------------------------------------------<br>MICHAEL VERARDO, ET AL.,<br>Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE<br>COMPANY, ET AL.,<br>Defendants. | Civil Action No. 1:21-cv-6243-LGS<br><br><br><br><br><br><br><br>Civil Action No. 1:22-cv-01714-LGS |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   PROCEDURAL BACKGROUND.................................................................. 3

III.  SUMMARY OF THE SETTLEMENT TERMS.............................................. 4

    A.    Class Definitions.................................................................................. 4

    B.    The Settlement Benefits: $48,000,000 Common Fund with No Reverter. ................... 5

    C.    Plan of Allocation. .............................................................................. 6

    D.    Distribution of Payments to the Class................................................... 8

    E.    Release. ............................................................................................. 9

    F.    The Notice Plan was Successfully Implemented ..................................... 9

    G.    Applications for (i) Attorneys' Fees and Litigation Expenses, and (ii) Class Representatives' Service Awards. ............................................... 11

IV.   APPLICABLE LEGAL STANDARDS ......................................................... 12

V.    THE SETTLEMENT WARRANTS APPROVAL ......................................... 14

    A.    The Settlement Is Procedurally Fair. .................................................. 14

    B.    The Settlement Is an Excellent Result for the Settlement Classes, and Consideration of the Risks of Continued Litigation, the Effectiveness of Proposed Distributions Methods, the Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Approval. ................................ 16

        1.    The Complexity, Expense, and Duration of Litigation........................ 17

        2.    The Effectiveness of Proposed Distributions Methods and the Lack of an Agreement Required to Be Identified Under 23(e)(3). ................ 19

        3.    Class Counsel's Reasonable Fee Request Will Neither Impair nor Delay Relief to the Settlement Classes........................................... 19

    C.    The Settlement Treats Settlement Class Members Equitably..................... 20

    D.    The Reaction of the Settlement Classes supports final approval ............... 21

    E.    The Remaining *Grinnell* Factors Weigh in Favor of Final Approval........ 21

VI.   THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASSES AND ENTER FINAL JUDGMENT.................................................. 22

VII.  CONCLUSION........................................................................................... 23

**TABLE OF AUTHORITIES**

## CASES

*Ambrosio v. Progressive Preferred Ins. Co.*,
No. CV-22-00342, 2024 U.S. Dist. LEXIS 36963 (D. Ariz. Mar. 4, 2024) ........................... 18

*Broockmann v. Bank of Greene Cnty.*,
No. 122CV00390AMNATB, 2023 WL 7019273 (N.D.N.Y. Oct. 25, 2023) ........................ 20

*Buffington v. Progressive Advanced Insurance Co. et al.*,
No. 20-cv-07408 (S.D.N.Y.) ............................................................................................... 22

*Christine Asia Co. v. Yun Ma*,
No. 115MD02631CMSDA, 2019 WL 5257534(S.D.N.Y. Oct. 16, 2019) ............................ 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).......................................................................................... passim

*Clark v. City of New York*,
No. 18 CIV. 2334 (AT), 2024 WL 1855668 (S.D.N.Y. Apr. 29, 2024)................................. 15

*Cook v. Gov't Emples. Ins. Co.*,
No: 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020).... 14

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)................................................................................................. 14

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)............................................................................................. 16, 18

*Diaz v. Hillsborough County Hosp. Auth.*,
2000 U.S. Dist. LEXIS 14061 (M.D. Fla. Aug. 7, 2000) ...................................................... 16

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).................................. 17

*Henson v. Progressive Premier Ins. Co. of Ill.*,
No. 5:22-CV-00182-M, 2024 U.S. Dist. LEXIS 109026 (E.D.N.C. June 7, 2024) ................ 18

*Hicks v. Morgan Stanley & Co.*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................................... 18

*In re AOL Time Warner, Inc.*,

iii

2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .............................................................................. 21

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................. 18

*In re Cablevision Consumer Litig.*,
   No. 10-cv-04992 JS AKT, 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) .............................. 23

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................................................... 16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05-cv-10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................... 12

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................................... 21

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   No. 20-CV-5917 (TAM), 2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ................................... 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................................. 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ..................................................................................... 17, 22

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   18 Md. 2819, 2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020) ..................................................... 20

*In re Synchrony Fin. Sec. Litig.*,
   No. 3:18-CV-1818-VAB, 2023 WL 4992933 (D. Conn. Aug. 4, 2023) .............................. 13, 21

*In re Tenaris S.A. Sec. Litig.*,
   No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ......................... 17

*Kroeger v. Progressive Universal Ins. Co.*,
   No. 4:22-cv-00104, 2023 U.S. Dist. LEXIS 231824 (S.D. Iowa Nov. 20, 2023) ................... 18

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
   No. 517CV359LEKATB, 2023 WL 3251421 (N.D.N.Y. May 3, 2023) ................................... 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ............................................................................................... 23

*Matheson v. T-Bone Rest., LLC,*
    No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)............................................ 16

*Melito v. Am. Eagle Outfitters, Inc.,*
    No. 14-cv-02440 (VEC), 2017 WL 3995619 (S.D.N.Y. Sep. 11, 2017)................................. 12

*Morgan v. Public Storage,*
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................................................... 21

*Morris v. Affinity Health Plan, Inc.,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)..................................................................................... 17

*Narcisse v. Progressive Casualty Insurance Company, et. al.,*
    No. 1:23-cv-04690-JGK (S.D.N.Y.) ........................................................................................ 22

*Nichols v. Noom, Inc.,*
    No. 20-CV-3677 (KHP), 2022 WL 2705354 (S.D.N.Y. July 12, 2022) ................................. 18

*Selby v. Principal Mut. Life Ins. Co.,*
    No. 98 CIV. 5283(RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003)............................. 22

*Soler v. Fresh Direct LLC,*
    20 Civ. 3431, 2023 WL 2492977 (S.D.N.Y. Mar. 14, 2023) .................................................. 13

*Stinson v. City of N.Y.,*
    256 F. Supp. 3d 283 (S.D.N.Y. 2017)..................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)...................................................................................................... 12

**STATUTES**

N.Y. C.P.L.R. § 5004............................................................................................................................ 7
N.Y. Gen. Bus. Law § 349................................................................................................................. 3, 4

**RULES**

Fed. R. Civ. P. 23(e) ........................................................................................................................ 12
Fed. R. Civ. P. 23(e)(2)....................................................................................................... 12, 13, 14, 22
Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................................... 16
Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................................... 16
Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................................... 16
Fed. R. Civ. P. 23(e)(2)(C)(ii)........................................................................................................... 19
Fed. R. Civ. P. 23(e)(2)(C)(iii).......................................................................................................... 19
Fed. R. Civ. P. 23(e)(2)(C)(iv).......................................................................................................... 19
Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................................... 20

Fed. R. Civ. P. 23(e)(3).............................................................................................. 16, 19

**OTHER AUTHORITIES**

*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022)................................................. 12

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, the Amended Class Action Settlement Agreement (the "Settlement") (ECF No. 378-7), and this Court's Preliminary Approval Order (ECF No. 380), Plaintiffs John Plotts, Zachary Goodier, James England, Kevin Lukasik, Lorenzo Costa, Michael Verardo, and Lori Lippa move for an order granting final approval of the Settlement they have reached with Defendants Progressive Advanced Insurance Company, Progressive Specialty Insurance Company, Progressive Max Insurance Company, and Progressive Casualty Insurance Company (collectively, "Progressive"). The Settlement is fair, reasonable, and adequate, and this Court should grant it final approval.

The proposed Settlement resolves all claims against Progressive in exchange for a cash payment of $48,000,000.00 (the "Settlement Fund") for the benefit of the Settlement Classes, less payment of attorney's fees, litigation expenses, and service awards. Every dollar of the Settlement Fund will be used for the benefit of Settlement Class Members. None will revert to Progressive or go to a cy pres recipient. This represents approximately 69% of compensatory damages that could have been recovered at trial. There is no claims process. Instead, each Settlement Class Member who does not opt out will automatically receive a *pro rata* distribution tailored to the value of their loss vehicle and calculated consistent with Plaintiffs' damages model. Frankly, this is an *excellent* result for the Settlement Classes. Indeed, Professor Brian T. Fitzpatrick, one of the preeminent class action scholars and experts, calls it, both substantively (total amount of recovery) and procedurally (settlement structure), "one of the top class action settlements" he has ever seen. Declaration of Brian T. Fitzpatrick ("Fitzpatrick Dec."), filed contemporaneously with this Motion.

The Settlement was achieved through years of hard-fought litigation against a Fortune 100 company and settled on the eve of trial. Progressive mounted a vigorous defense at each step, requiring Plaintiffs to (i) defeat its motion to dismiss, (ii) achieve contested class certification, which included consultation of reports and testimony from experts in the automotive industry, statistics, and appraisal profession, (iii) defeat Progressive's *Daubert* motions; (iv) defeat Progressive's petition for interlocutory review of the certification order, (v) defeat Progressive's motion for summary judgment; and (v) engage in significant pre-trial preparations and proceedings (including drafting and responding to motions in limine; submitting proposed voir dire questions, jury instructions, and a verdict form; preparing trial exhibit lists and objections to Defendants' exhibit list; and preparing witnesses to testify). Less than a month before trial, the parties participated in extensive mediation efforts with well-respected mediators at Phillips ADR Enterprises, P.C. Thus, by the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Progressive's defenses.

The notice program is already a great success. Direct notice was delivered to 76,556 of the 82,276 identified Settlement Class Members, or approximately 93% of the entire Settlement Class. Declaration of Cameron R. Azari, Esq., on Implementation and Adequacy of Settlement Notice Plan ("Azari Dec."), filed contemporaneously with this motion, at ¶¶ 14–17. And the final reach of the notice campaign is anticipated to exceed 95%, after skip-tracing efforts conclude for Settlement Class Members whose Postcard Notices were initially returned as undeliverable. *Id.* ¶ 17. To date, not a single Settlement Class Member has objected to the Settlement, and only one (1) has sought exclusion from the Settlement Classes. *Id.* ¶ 21. Thus, the reaction of Settlement Class Members has been overwhelmingly positive.

In sum, the Settlement is an excellent result for Settlement Class Members and easily satisfies the criteria for final approval. Plaintiffs thus respectfully request the Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) certify the Settlement Classes for purposes of judgment; (3) find that the Notice Plan satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (4) enter final judgment.

## II.    PROCEDURAL BACKGROUND

Plaintiffs Dominick Volino and John Plotts filed this action in July 2021, alleging that Progressive breached its insurance policy and violated New York General Business Law § 349 by applying Projected Sold Adjustments ("PSAs"). ECF No. 1. This action was consolidated with the related case *Verardo, et al. v. Progressive Cas. Ins. Co., et al.*, (ECF No. 108), and Plaintiffs filed a consolidated class action complaint. ECF No. 111.

Progressive moved to dismiss this complaint.[1] As part of this motion, Progressive raised a dispositive preemption defense, arguing that Plaintiffs could not challenge Progressive's use of Mitchell Reports because "the Superintendent [of Insurance] approved the use of the Mitchell Software under the regulatory framework established by [] Regulation 64." ECF No. 125 at 10. Following full briefing, the Court denied Progressive's motion. ECF No. 152.

After taking discovery, the parties fully briefed (1) Plaintiffs' motion for class certification, which the Court granted, and (2) Progressive's motions to exclude Plaintiffs' experts, which the Court denied. ECF No. 208. Progressive petitioned the Second Circuit for an interlocutory review

---

[1] Progressive had previously moved to dismiss the Amended Complaint and Second Amended Complaint, but those were denied as moot when each was superseded by an amended pleading.

of this Court's certification order pursuant to Rule 23(f). Plaintiffs opposed the petition, and the Second Circuit denied it. ECF No. 234.

Following the Second Circuit's denial, Progressive moved for summary judgment on all Plaintiffs' claims. ECF No. 243. The Court granted Progressive's motion pertaining to Plaintiffs' theory that application of PSAs violated Regulation 64, but otherwise denied Progressive's motion and set the case for trial on Plaintiffs' claims for breach of contract and violations of GBL § 349. ECF Nos. 298 & 299. This case was later set for a first-out trial on July 8, 2024. ECF No. 310.

The parties mediated this case on June 11, 2024. By that time, the parties had completed nearly all pre-trial filings, including briefing all evidentiary motions and submitting their proposed voir dire questions, jury instructions, verdict forms, witness lists, and exhibit lists. Thus, this case was ready for trial when the parties engaged in mediation, during which the substantive terms of the proposed Settlement were reached.

On August 14, 2024, the Court held a hearing on Plaintiffs' Motion for Preliminary Approval. At the hearing, the Court ordered Plaintiffs to make changes to the definitions of the Settlement Classes and to the forms of the proposed notice documents. ECF No. 377. Plaintiffs implemented the Court's requested changes (ECF No. 378), and the Court then granted preliminary approval of the Settlement and notice plan (ECF No. 380).

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A. Class Definitions.

The Settlement defines the Settlement Classes as:

**First Party Class**: All persons who made a first-party claim on a policy of insurance issued by any Progressive Group entity to a New York resident who, from July 28, 2015 through the date of Preliminary Approval, received compensation from one of the Defendants for the total loss of a covered vehicle, where that

compensation was based on an Instant Report prepared by Mitchell International, Inc. and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

**Third Party Class**: All persons who made a third-party claim on a policy of insurance issued by any Progressive Group entity to a New York resident who, from July 28, 2018, through the date of Preliminary Approval, received compensation from one of the Defendants for the total loss of a covered vehicle, where that compensation was based on an Instant Report prepared by Mitchell and the actual cash value was decreased based upon Projected Sold Adjustments to the comparable vehicles used to determine actual cash value.

Settlement Agreement at ¶¶ 1.c.–d. Previously, this Court entered an order (ECF No. 208) certifying two litigation classes: a Breach of Contract Class and a GBL Class, each of which ran through the date the order was entered. ECF No. 208 at p. 2. The only substantive change between the certified litigation classes and the Settlement Classes is that the Settlement Classes run to and through the date of the order granting Preliminary Approval.[2] To simplify and streamline the Notice Program and the Plan of Allocation, the subclasses specific to each Progressive entity have been eliminated. *Compare* Settlement Agreement at ¶¶ 1.c.–d. *with* ECF No. 208. Additionally, the parties amended the Settlement Agreement to comply with the Court's instructions to define the Settlement Classes as "First Party Class" and "Third Party Class," rather "Breach of Contract Class" and "GBL Class." *Compare* Settlement Agreement at ¶¶ 1.c.–d. *with* ECF No. 371-1 at ¶¶ 1.c.–d. (prior version of Settlement).

### B.  The Settlement Benefits: $48,000,000 Common Fund with No Reverter.

As required by the Settlement, Defendants established a Settlement Fund of $48,000,000.00 for the benefit of Settlement Class Members, with no reverter to Progressive whatsoever. Settlement Agreement at ¶¶ 7 & 10.b. This amount represents approximately 69% of

---

[2] The Settlement Classes do not include the 9 individuals who previously opted out of this Action. *See* ECF No. 293.

the compensatory damages alleged by Plaintiffs under the damages model they were prepared to present at trial, and a gross recovery of approximately $516, on average, per claim. ECF No. 376 at 2. Notably, there is *no claims process*. Instead, each Settlement Class Member who does not opt out will automatically receive a *pro rata* distribution tailored to the value of their loss vehicle and calculated consistent with Plaintiffs' damages model.

The plan of allocation Class Counsel proposed at preliminary approval, and proposes again here, is explained in Sections III. C and D and in the Declaration of Hank Bates filed with Plaintiffs' Motion for Preliminary Approval. ECF No. 371, ¶¶ 35–41. Additionally, the tailored damages estimates provided to Settlement Class Members in the email and postcard notices, which the Court approved, were based on the following plan of allocation.

### C.  Plan of Allocation.

Class Counsel proposes that, unless a Settlement Class Member submits a valid and timely Request for Exclusion, he or she automatically be issued a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees, litigation expenses, service awards, and costs of notice and settlement administration (the "Distributable Settlement Amount"). ECF No. 371 at ¶¶ 35–43. After such payments are deducted (assuming this Court approves the requested amounts), the Distributable Settlement Amount will be approximately $31,200,000, yielding individual payments to Settlement Class Members of approximately $335.00, on average, per claim.[3] *See* ECF No. 371 at ¶ 36; ECF No. 376 at 2.

---

[3] Class Counsel estimated there would be approximately 93,000 members of the Settlement Classes. *See* ECF No. 371, p. 9 n.6. That figure, though, represents the number of total-loss *claims* Settlement Class Members made during the Settlement Class Period. Progressive produced updated Settlement Class data through August 20, 2024. From this data, Class Counsel and the Settlement Administrator determined there are 82,276 Settlement Class Members. Azari Dec., ¶

Class Counsel proposes that Settlement Class Members' distributions be made under the following procedure, which tracks the damages model set forth in prior pleadings and that Class Counsel was prepared to present at trial. Under this procedure, each Settlement Class Member will be treated equitably, as each will receive the same pro rata percentage of their potential damages in this Action.

*First*, Class Counsel and their experts have determined from a review of the sample claim files in this Action and related actions involving Progressive entities that, on average, application of PSAs caused the Baseline Valuations of ACV in WCTL Reports to be lowered by 6.5%, which is the "PSA Impact" percentage. To calculate the potential damages for each Settlement Class Member's claim, the PSA Impact percentage will be multiplied by (a) the WCTL Baseline Valuation of ACV, (b) the Total Tax Settlement Amount, and (c) the Condition Adjustment documented in Progressive's claims data for their insurance claim.[4] To the sum of (a)–(c) is added prejudgment interest at a rate of 9%[5] simple per annum from the date of valuation to arrive at each Settlement Class Member's Damages. ECF No. 174-5 at 23–25 & ECF No. 198-1 at Mitchell-Volino Subpoena 001701 (describing relationship of condition adjustment to base value).

*Second*, Class Counsel will calculate the sum of all Settlement Class Members' Damages, which will be the Aggregate Damages. ECF No. 371, ¶ 39. *Third*, Class Counsel will divide the Distributable Settlement Amount by the Aggregate Damages to calculate the Pro Rata Ratio. *Id.*

---

10. Because some Settlement Class Members made more than one claim during the class period, there are 93,551 claims that will be paid from the Settlement Fund. *Id.*

[4] Each of these amounts (WCTL Baseline Valuation, Total Tax Settlement Amount, and Condition Adjustment) are maintained by Progressive in its records. ECF No. 174-6 at 16. This formulation tracks the damages calculations explained by Dr. Michelle Lacey in her expert reports. ECF No. 174-5 at 23–25.

[5] N.Y. C.P.L.R. § 5004.

at ¶ 40. ***Fourth***, the pro rata distribution to be paid will be calculated by multiplying the Pro Rata

Ratio by each Settlement Class Member's Damages. *Id.* at ¶ 41.

### D.  Distribution of Payments to the Class.

Payments of each Settlement Class Members' portion of the Distributable Settlement

Amount will be made within 90 days after Final Judgment. Settlement Class Members for whom

the Settlement Administrator does not have an email address will automatically be issued checks.

Within 45 days after Final Judgment, each Settlement Class Member for whom the Settlement

Administrator has an email address will be emailed a link they can follow to choose whether to

receive their recovery electronically—e.g., Venmo, PayPal, or ACH transfer—or by check.[6] This

link will remain active for 30 days. Any Settlement Class Member who did not elect to receive

their recovery via an electronic payment option will be issued a check. To be clear, every

Settlement Class Member will receive a recovery unless they submit a valid opt-out request.

Checks that are not cashed within 90 days of issuance will be redistributed on a pro rata[7]

basis to all Settlement Class Members who either cashed their initial checks or received electronic

payments during the initial distribution. The Settlement Administrator will continue to make

distributions to Settlement Class Members who either received their distribution electronically or

who cashed the check sent in the prior distribution until Settlement Class Members receiving

further distribution by check would receive less than $5.00 or a further distribution would

otherwise not be feasible. Once either event occurs, Plaintiffs will petition the Court for permission

---

[6] This process is designed to encourage a higher rate of electronic payments, which cost less than issuing physical checks and will result in higher payouts.

[7] To determine the pro rata distribution in each subsequent distribution, the Settlement Administrator will, after first deducting any necessary settlement-administration expenses from the uncashed-check funds, re-run the calculations used in the initial distribution, using the modified Distributable Settlement Amount for those Class Members who will receive the distribution.

to distribute the remaining funds on a pro rata basis to Settlement Class Members who received their payments electronically, thus depleting the Settlement Fund and ensuring *all* Settlement Funds directly benefit Settlement Class Members. No funds from the Settlement will revert to Defendants. Settlement Agreement at ¶ 10.b.

### E.  Release.

In exchange for the consideration from Progressive, the Action will be dismissed with prejudice upon Final Approval, and the Settlement Class Members will release all claims against Progressive and the Released Parties through the date the Court enters the Final Judgment, relating to Progressive's settlement of a total-loss property claims. Settlement Agreement at ¶¶ 12–13. Released Claims do not include (1) any claims for personal injury, medical payment, uninsured or underinsured motorist, (2) the claims of any party in the settlement agreed to in *Buffington v. Progressive Advanced Insurance Co. et al.*, No. 20-cv-07408 (S.D.N.Y.), or (3) the claims being litigated in *Narcisse v. Progressive Casualty Insurance Company, et. al.,* No. 1:23-cv-04690-JGK (S.D.N.Y.). *See id*. at ¶ 12.

### F.  The Notice Plan was Successfully Implemented

Pursuant to the Court's Order granting preliminary approval, the Settlement Administrator implemented the notice plan. To date, direct notice has been delivered to 76,556 of the 82,276 Settlement Class Members. Thus, approximately 93% of Settlement Class Members have received direct notice. Azari Dec., ¶ 17. The Settlement Administrator anticipates that once forthcoming postcard notices are delivered—which have been sent to Settlement Class Members where email notice was undeliverable—the percentage of Settlement Class Members receiving direct notice will increase to approximately 95%, *id.*, which would be consistent with the final reach of direct notice issued to the certified litigation classes. ECF No. 293-1 at ¶¶ 13 & 16.

9

The Administrator updated the website for this case (www.NYTotalLossClaim.com) with additional information regarding the Settlement. Specifically, Settlement Class Members may access from the website the Long Form Notice, Settlement Agreement, and the Preliminary Approval Order. Azari Dec., ¶ 18. The Settlement Administrator will add to the available documents Class Counsel's application for attorneys' fees, litigation expenses, and service awards. *Id.* The settlement website also includes updated relevant dates, answers to frequently asked questions, information regarding Settlement Class Members' rights, instructions for how they may opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. The settlement website address was displayed prominently on all Notice documents.  As of October 28, 2024, there have been 4,677 unique visitor sessions to the settlement website, and 10,467 web pages have been presented. *Id.* ¶ 18.

The existing toll-free telephone number that was established for the class certification notice efforts was updated with additional information regarding the Settlement. *Id.* ¶ 19. Callers can hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Long Form Notice be mailed to them. *Id.* The automated telephone system is available 24 hours per day, 7 days per week. *Id.* The toll-free telephone number was prominently displayed on all Notice documents. *Id.* As of October 28, 2024, there have been 548 calls to the toll-free telephone number representing 1,304 minutes of use. *Id.*

The existing post office box that was established for the class certification notice efforts for correspondence continues to be available, allowing Settlement Class Members to contact the Settlement Administrator by mail with any specific requests or questions. To date, the Settlement

Administrator has received one request for exclusion and no objections.[8] *Id.* ¶ 21.

### G. Applications for (i) Attorneys' Fees and Litigation Expenses, and (ii) Class Representatives' Service Awards.

In accordance with the Settlement Agreement, Class Counsel is concurrently filing a motion requesting an award of attorneys' fees and litigation expenses to compensate them for the work already performed in this case, the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Settlement Agreement at ¶ 11. Class Counsel is requesting an award of $16,000,000—i.e., one third of the $48,000,000.00 Settlement Fund—and reimbursement of out-of-pocket litigation costs of $342,766.26. The enforceability of the Settlement Agreement is not contingent on the Court's approval of Class Counsel's application for an award of attorneys' fees or litigation expenses.

Additionally, the Settlement Agreement provides that Plaintiffs may request a service award for each Class Representative. *Id.* In the notice documents sent to Settlement Class Members, Plaintiffs stated they would request up to $15,000.00 per Class Representative. ECF No. 378-2, at 4; ECF No. 378-4, at 3. Plaintiffs are, however, requesting only $10,000.00 per Settlement Class Representative or $70,000 collectively—i.e., only two-thirds of what they stated they might request. ECF No. 371, at ¶ 47. These service awards, which amount in the aggregate to approximately 0.15% of the Settlement Fund, will be paid out of the Settlement Fund and will compensate Plaintiffs for their efforts serving as Class Representatives through almost three years of litigation and preparing to represent class members at trial. *Id.*

---

[8] The Notice Plan is ongoing, and the deadline for requests for exclusion and objections is November 19, 2024. On or before December 3, 2024, Plaintiffs and Class Counsel will provide an update on the implementation of the Notice Plan, any additional requests for exclusions and any objections that may be received.

## IV.    APPLICABLE LEGAL STANDARDS

Rule 23(e) requires judicial approval for the settlement of class actions that bind class members. *See* Fed. R. Civ. P. 23(e). The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord, e.g.*, *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440 (VEC), 2017 WL 3995619, at *11 (S.D.N.Y. Sep. 11, 2017) ("[A]pproval of a class settlement is within the [] court's discretion, 'which should be exercised in light of the [] judicial policy favoring settlement.'"); *Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation."); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.").

Rule 23(e)(2) requires courts to consider the following questions in determining whether a proposed settlement is "fair, reasonable, and adequate:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"In deciding whether the compromise is fair, reasonable, and adequate, the court must consider both the substantive terms of the settlement and whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (cleaned up). In performing this analysis, courts in this Circuit supplement the Rule 23(e)(2) factors with the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See Soler v. Fresh Direct LLC*, 20 Civ. 3431, 2023 WL 2492977, at *2 n.3 (S.D.N.Y. Mar. 14, 2023) ("The advisory committee notes ... indicate that the ... Rule 23 factors were not intended to displace the *Grinnell* factors, but to focus courts on the core concerns of procedure and substance." (internal quotation marks omitted)). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund given the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

The Settlement satisfies every criterion for approval. *First*, the Settlement establishes a non-reversionary fund of nearly 70% of Settlement Class Members' compensatory damages. The Settlement was reached on the eve of trial following years of hard-fought litigation and only with the assistance of two neutral mediators. It is fundamentally fair, reasonable, and adequate. *Second*, the Settlement Classes merit certification pursuant to Rules 23(a) and (b)(3) for purposes of judgment on the Settlement. *Third*, the Settlement Administrator successfully implemented the

Court-approved Notice Plan, complying with the requirements of Rule 23(c)(2) and due process. Accordingly, the Court should grant Plaintiffs' motion for final approval of the Settlement.

## V.    THE SETTLEMENT WARRANTS APPROVAL

### A.  The Settlement Is Procedurally Fair.

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (overlapping with the third *Grinnell* factor, *i.e.* the stage of the proceedings and the amount of discovery completed). In assessing adequacy of representation, courts focus on whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc*., 502 F.3d 91, 99 (2d Cir. 2007). In other words, the "adequacy" component of Rule 23(e) does not overlap with Rule 23(a)(4), but rather addresses whether the Class Representatives had a sufficient (or adequate) information base upon which to determine whether the terms of a settlement offer were desirable compared to the strengths and weaknesses of the claims should settlement be rejected. *See, e.g.*, *Cook v. Gov't Emples. Ins. Co.*, No: 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956 (M.D. Fla. Jun. 22, 2020) ("The Advisory Committee explained that this analysis is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims.").

Here, Plaintiffs' interests are aligned with the interests of Settlement Class Members as all suffered the same alleged harms from Progressive applying PSAs as part of its method of calculating the ACV of totaled vehicles. Plaintiffs and Settlement Class Members also share the

same interests in securing relief, which Plaintiffs have vigorously pursued throughout this litigation. Moreover, there are no conflicts between Plaintiffs and Settlement Class Members. Indeed, as this Court previously determined, "[t]he named Plaintiffs thus share the interest of any potential absent class members who might similarly have multiple complaints about Progressive, and have no 'interests antagonistic to the interests of other class members.'" ECF No. 208 at p. 13.

Similarly, Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, and have dedicated significant time and personnel to this litigation. ECF No. 208 at p. 23-24 (appointing CBP as Class Counsel); ECF No. 223 (adding Normand PLLC, Edelsberg Law, P.A., and Shamis & Gentile as Class Counsel); ECF No. 356 (adding Bailey Glasser as Class Counsel). As demonstrated by the record, Plaintiffs and Class Counsel performed significant work in identifying and litigating the claims of Plaintiffs and the Settlement Class Members prior to the Settlement, including: engaging in extensive factual investigation; drafting the initial and amended complaints; completing fact and expert discovery and reviewing voluminous discovery materials; engaging in substantial motions practice (including motions to dismiss, class certification briefing, Rule 23(f) appellate briefing, *Daubert* motions, summary judgment briefing, and motions in limine); conducting pre-trial preparations and engaging in pre-trial proceedings; and participating in a full-day mediation. *See* ECF No. 371, at ¶¶ 3–14. Indeed, settlement negotiations only began on the eve of trial, which was scheduled to commence on July 8, 2024, after three years of hard-fought litigation. *Id*. at ¶¶ 11–13. The adversarial posture and thoroughness of the proceedings, the substantial discovery taken, and the adequacy of representation all favor approving the Settlement. *See, e.g., Clark v. City of New York*, No. 18 CIV. 2334 (AT), 2024 WL 1855668, at *1 (S.D.N.Y. Apr. 29, 2024); *Matheson v. T-Bone*

*Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval where "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims" and "[t]he parties' participation in a day-long mediation allowed them to further explore the claims and defenses"); *Diaz v. Hillsborough County Hosp. Auth.*, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion).

In sum, Plaintiffs' interests are aligned with those of Settlement Class Members. Class Counsel thoroughly represented the interests of the Settlement Classes throughout the adversarial litigation and the mediation process. As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is thus procedurally fair. *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (settlement was procedurally fair where negotiations were overseen by a neutral mediator and parties engaged in "extensive" discovery); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator's involvement in "negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

> **B.  The Settlement Is an Excellent Result for the Settlement Classes, and Consideration of the Risks of Continued Litigation, the Effectiveness of Proposed Distributions Methods, the Application for Attorneys' Fees, and the Lack of any Side Agreement Favor Approval.**

Next, courts assess the Settlement's substantive fairness. Rule 23(e)(2)(C) enumerates four factors when assessing whether the relief provided is sufficient: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class…" (iii) "the terms of any proposed award of attorney's fees," and (iv) "any agreement required to be identified under Rule 23(e)(3)." *See also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors one, four through six, eight, and nine). Recovering 69% of compensatory

damages is an excellent result in any case in any context. It is particularly impressive in the class action context which adds significant procedural and legal complexity and risk at the pre-trial, trial, and appellate stages. *See* Fitzpatrick Dec., ¶ 26 ("To put it frankly, very few class action settlements recover anywhere near 69% of the class's best-case damages.").

### 1. The Complexity, Expense, and Duration of Litigation

The first Rule 23(e)(2)(C) factor is "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one ("complexity, expense, and likely duration of the litigation") and four, five, and six (risks of establishing liability and damages and maintaining the class). *See Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 517CV359LEKATB, 2023 WL 3251421, at *4 (N.D.N.Y. May 3, 2023); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). The Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id*.

Continued litigation would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also, e.g.*, *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (same); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012). Litigation inherently involves risks and uncertainty, which is especially true where, as here, proof of liability and damages hinge on a battle between experts. *See In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (recognizing expert discovery can "substantially increase

costs to the settlement class and result in a costly 'battle of the experts' at trial"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

Additionally, Plaintiffs face the risk of maintaining class certification through trial and appeal. *See generally Nichols v. Noom, Inc.*, No. 20-CV-3677 (KHP), 2022 WL 2705354, at *9 (S.D.N.Y. July 12, 2022) (stating the risk attendant to defending any decertification motion supported approval of the settlement). Defendants have already demonstrated their willingness to seek the Second Circuit's intervention, filing a petition for permission to appeal the Court's Class Certification Order pursuant to Rule 23(f). ECF No. 371, at ¶¶ 9–10. Thus, the risk of a motion for decertification, coupled by a nearly certain appeal by Defendants of any judgment favorable to Plaintiffs, promised further expense and delay. Indeed, in several companion cases brought in other jurisdictions, class certification was denied, which indicates the significant risk facing Plaintiffs here. *Henson v. Progressive Premier Ins. Co. of Ill.*, No. 5:22-CV-00182-M, 2024 U.S. Dist. LEXIS 109026 (E.D.N.C. June 7, 2024); *Kroeger v. Progressive Universal Ins. Co.*, No. 4:22-cv-00104, 2023 U.S. Dist. LEXIS 231824 (S.D. Iowa Nov. 20, 2023); *Ambrosio v. Progressive Preferred Ins. Co.*, No. CV-22-00342, 2024 U.S. Dist. LEXIS 36963 (D. Ariz. Mar. 4, 2024).

By reaching a favorable settlement, Plaintiffs avoided significant expense and delay and the risks of trial and appeal and secured immediate benefits for the Settlement Classes. Consideration of these factors sharply weigh in favor of approval. *See Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an

uncertain future settlement or trial of the action."); Fitzpatrick Dec., ¶ 26 ("In light of the risks the Classes faced—not only at trial, but on appeal after trial—it is hard to conclude that the recovery here is anything other than spectacular").

### 2. The Effectiveness of Proposed Distributions Methods and the Lack of an Agreement Required to Be Identified Under 23(e)(3).

Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective," while Rule 23(e)(2)(C)(iv) requires identification of any agreement under Rule 23(e)(3).

Here, there is no claims process. Thus, unless a Settlement Class Member opts out of the Settlement, he or she will *automatically* receive a *pro rata* distribution from the Settlement Fund less any court-approved attorneys' fees, litigation expenses, service awards, and costs of settlement administration. The Settlement Fund represents approximately 69% of the compensatory damages sought by Plaintiffs. This means that after payment of attorneys' fees, litigation expenses, settlement administration expenses, and service awards, the Distributable Settlement Amount will be approximately $31,200,000.00, which in turn will yield individual payments to Settlement Class Members of, on average, approximately $335.00. *See* ECF No. 371 at ¶ 36; ECF No. 376 at 2. No funds from the Settlement will revert to Defendants. Agreement at ¶ 10.b. Further, there are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3). Accordingly, consideration of Rule 23(e)(2)(C)(ii) and (iv) weigh in favor of approval.

### 3. Class Counsel's Reasonable Fee Request Will Neither Impair nor Delay Relief to the Settlement Classes.

Under Rule 23(e)(2)(C)(iii), this Court is also to consider the "terms of any proposed award

of attorney's fees, including timing of payment." Class Counsel has contemporaneously filed a motion for attorney's fees and costs that seeks an award consistent with precedent in this district and the Second Circuit. *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 18 Md. 2819, 2020 WL 6193857, at *5-6 (E.D.N.Y. Oct. 7, 2020); *In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL 308242, at *15 (E.D.N.Y. Jan. 26, 2024). The Settlement is in no way contingent on this Court's awarding the full award requested. Nor will the Court's decision on the amount of the award delay Settlement Class Members receiving compensation, as the parties have waived their right to appeal the Court's award of attorneys' fees. ECF No. 378-7, ¶ 11(b).

### C. The Settlement Treats Settlement Class Members Equitably.

The Settlement treats members of the Settlement Classes equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). As detailed above, each Settlement Class Member will automatically receive a *pro rata* distribution, which tracks the damages model in this action and is tailored to the value of their loss vehicle and their potential damages. Thus, there is no preferential treatment for any Settlement Class Members and the plan of allocation treats members equitably. *See Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *11 (N.D.N.Y. Oct. 25, 2023) (finding the requirement that class members be treated equitably relative to each other was satisfied where each class member was to receive a "pro rata share" of the net settlement fund or forgiveness of certain uncollected fees); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (finding the settlement satisfied Rule 23(e)(2)(D) because under the proposed plan of allocation, "Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on the amount of

their Recognized Loss.").

### D. The Reaction of the Settlement Classes supports final approval.

The reaction of Settlement Class Members has been almost universally positive. To date, only one Settlement Class Member has requested exclusion. Azari Dec., ¶ 21. Not a *single* Settlement Class Member has submitted an objection. *Id.*; *see also, e.g.*, *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (one objection out of "hundreds of thousands class members" indicates strong satisfaction with settlement). Settlement Class Members have until November 19, 2024, to request exclusion or to object to the Settlement. ECF No. 380, at 10. Class Counsel will update the Court after that deadline and prior to the Final Approval Hearing.

The lack of *any* opposition to the Settlement strongly weighs in favor of final approval. *See Grinnell*, 495 F.2d at 463 (factor two; at the final approval stage, courts consider the Settlement Class's reaction to the Settlement).

### E. The Remaining *Grinnell* Factors Weigh in Favor of Final Approval.

Under the seventh *Grinnell* factor, courts should consider "the ability of the defendants to withstand a greater judgment." *Grinnell*, 495 F.2d at 463. Courts do not require that a defendant "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (internal citation omitted). Rather, where, as here, "the other *Grinnell* factors weigh heavily in favor of settlement," a court "need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *9; *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair."). Progressive is a behemoth, and it is difficult to imagine

any judgment that could empty its coffers. Achieving a Settlement that recovers approximately 69% of the compensatory damages is a great recovery. Every other *Grinnell* factor weighs heavily in favor of settlement. That Progressive potentially could pay more—years from now after Plaintiffs successfully cleared every other hurdle to collecting judgment—does not detract from the fairness, reasonableness, and adequacy of the Settlement.

Lastly, courts may also look to the scope of the release. *See Payment Card*, 330 F.R.D. at 42 n.41. Here, the scope of the release is not overly broad as Settlement Class Members will release only those property claims relating to Progressive's settlement of a Settlement Class Members' total-loss claim. *See* Settlement Agreement at ¶¶ 12–13. Released Claims do not include (i) any claims for personal injury, medical payment, uninsured motorist or underinsured motorist, (ii) the claims and rights of any party in the settlement agreed to in *Buffington v. Progressive Advanced Insurance Co. et al.*, No. 20-cv-07408 (S.D.N.Y.), and (iii) the claims being litigated in *Narcisse v. Progressive Casualty Insurance Company, et. al.,* No. 1:23-cv-04690-JGK (S.D.N.Y.). *See id*. Thus, the release is narrowly tailored and appropriate. *See Selby v. Principal Mut. Life Ins. Co.,* No. 98 CIV. 5283(RLC), 2003 WL 22772330, at *3 (S.D.N.Y. Nov. 21, 2003) (finding narrow release of class claims that allowed class members who believe they may have been injured by the alleged practice to pursue claims for monetary relief through individual or class suits weighed in favor or preliminary approval).

In sum, the applicable factors under Rule 23(e)(2) and *Grinnell* strongly support approval. This Court should therefore grant final approval of the Settlement.

## VI.    THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASSES AND ENTER FINAL JUDGMENT.

A settlement class will be certified where the four requirements of Rule 23(a) are

satisfied—numerosity, commonality, typicality and adequacy of representation—plus the requirements of any one of the sub-sections of Rule 23(b). *See* Fed. R. Civ. P. 23. Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). In general, the Rule 23 certification requirements "should be 'given liberal rather than restrictive construction . . . .'" *In re Cablevision Consumer Litig.*, No. 10-cv-04992 JS AKT, 2014 WL 1330546, at *5 (E.D.N.Y. Mar. 31, 2014) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

Here, the Court already determined that it likely will be able to certify the Settlement Classes for purposes of judgment on the proposed Settlement. In so holding, the Court concluded—as it did when it granted certification of the litigation classes (ECF No. 208)—that the requirements of Rule 23(a) and (b)(3) were satisfied after a thorough analysis. ECF No. 380 at ¶ 7. Plaintiffs respectfully request the Court confirm its preliminary certification of the Settlement Classes.

## VII.    CONCLUSION

Plaintiffs respectfully request the Court to enter an order (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) certifying the Settlement Classes; and (iii) finding that the notice program effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances.

Dated: November 5, 2024                    Respectfully submitted,

                                           */s/ Hank Bates*
                                           Hank Bates (admitted *pro hac vice*)
                                           Tiffany Oldham (admitted *pro hac vice*)
                                           Lee Lowther (admitted *pro hac vice*)
                                           **CARNEY BATES & PULLIAM, PLLC**
                                           One Allied Drive, Suite 1400

23

Little Rock, Arkansas 72202
Telephone: (501) 312-8500
Email: hbates@cbplaw.com
Email: toldham@cbplaw.com
Email: llowther@cbplaw.com

Jacob L. Phillips (admitted *pro hac vice*)
**JACOBSON PHILLIPS PLLC**
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, Florida 32701
Telephone: (407) 720-4057
Email: jacob@jacobsonphillips.com

Andrew J. Shamis (NY #5195185)
Edwin Eliu Elliott (admitted *pro hac vice*)
**SHAMIS & GENTILE, P.A.**
14 NE First Avenue, Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
Email: ashamis@shamisgentile.com
Email: edwine@shamisgentile.com

Scott Edelsberg (admitted *pro hac vice*)
**EDELSBERG LAW, PA**
20900 NE 30th Avenue, Suite 417
Aventura, Florida 33180
Telephone: (305) 975-3320
Email: scott@edelsberglaw.com

Edmund A. Normand (admitted *pro hac vice*)
**NORMAND PLLC**
3165 McCrory Place, Suite 175
Orlando, Florida 32803
Telephone: (407) 603-6031
Email: ed@normandpllc.com

Thomas M. Mullaney (TM-4274)
**THE LAW OFFICE OF THOMAS M. MULLANEY**
530 Fifth Avenue, 23rd Floor
New York, New York 10036
Telephone: 212-223-0800
Email: tmm@mullaw.org

24

Brian A. Glasser (admitted *pro hac vice*)
James L. Kauffman (admitted *pro hac vice*)
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Email: bglasser@baileyglasser.com
Email: jkauffman@baileyglasser.com

Patricia M. Kipnis (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
923 Haddonfield Rd. Suite 307
Cherry Hill, NJ 08002
Telephone: (304) 340-2282
Email: pkipnis@baileyglasser.com

Jonathan Marshall (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Email: jmarshall@baileyglasser.com

*Counsel for Plaintiffs and the Classes*

## CERTIFICATE OF SERVICE

I certify that on November 5, 2024, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic mail notice to all counsel of record.

/s/ Hank Bates
Hank Bates

25